**ST. JUDE MEDICAL, INC., Plaintiff,**

v.

**INTERMEDICS, INC. and Carbomedics, Inc., Defendants.**

**Civ. No. 4–84–267.**

United States District Court, D. Minnesota, Fourth Division.

June 28, 1985.

R. Walter Bachman, Lindquist & Vennum, and John D. Levine, and Michael E. Bress, Dorsey & Whitney, Minneapolis, Minn., for St. Jude Medical, Inc.

Edmund McCabe, and Sydelle Pittas, McCabe and Gordon, Boston, Mass., and Leon Goodrich, Oppenheimer, Wolff, Foster, Shepard & Donnelly, St. Paul, Minn., for CarboMedics, Inc. and Intermedics, Inc.

## MEMORANDUM OPINION AND ORDER

DIANA E. MURPHY, District Judge.

This action arises from a manufacturing relationship involving St. Jude Medical, Inc. (St. Jude), Intermedics, Inc. (Intermedics), and CarboMedics, Inc. (CarboMedics). On October 10, 1984, this court granted St. Jude's motion for a preliminary injunction and ordered CarboMedics to begin to manufacture and deliver carbon-coated heart valve components to St. Jude.

CarboMedics appealed the injunction order to the Eighth Circuit Court of Appeals and also sought a stay of the injunction. The Eighth Circuit has recently affirmed the merits of the injunction. Before reaching the merits, however, it denied CarboMedics' motion for a stay and remanded the matter to this court on December 14, 1984 to:

(1) Require St. Jude to make available to CarboMedics a loan in the sum of $1 million, at the prime rate of interest under normal commercial terms; this loan shall remain in effect until further order of the district court; and

(2) Determine the price at which CarboMedics should be required to sell the carbon components to St. Jude which would provide CarboMedics with a percentage of profit per unit approximately equal to the percentage of profit per unit reasonably anticipated under the 1983 supply agreement.

Subsequently, this court's order was amended pursuant to the order of the Eighth Circuit and the parties were ordered to submit materials on the price issue and proposed terms and conditions of the loan agreement. Various materials were submitted, and after a lengthy appointment process for a suitable special master was completed, the loan terms and interim price issues were referred to him.

Special Master Morris M. Sherman held a hearing on these issues and then allowed the parties to submit memoranda and proposed findings of fact and conclusions of law. The Master then submitted his report to the court. He determined, among other things, that the interim price should be set at $600 per valve set, and that the loan should be unsecured with CarboMedics having the obligation to pay off the principal of the loan as a borrower in a normal commercial setting. The parties were given an opportunity to file their objections to his recommendations.

The court has carefully reviewed all the relevant materials and has made a de novo determination of those portions of the pro-

posed findings of fact or conclusions of law to which objection has been made.

### I.

St. Jude urges the court to adopt the recommendations of the Special Master in calculating an interim price, but it argues that the base price used to compute the inflation index price is too high. It also asks this court to reconsider the master's recommendation that the loan be unsecured in light of an affidavit of G. Russell Chambers regarding "the collapse of CarboMedics' earnings" and "Intermedics' current financial crunch." Chambers aff. at ¶ 8.

CarboMedics seeks to have the court reject the proposed findings of fact contained in paragraphs 12, 15, 16, 17, 18, 19, 20, 21, 23, and 31 of the report, as well as the proposed conclusions of law in paragraphs 2, 3, and the first and last sentence of paragraph 5. It argues that the master misinterpreted the Eighth Circuit's remand order by determining that the marginal costs of hiring and training new personnel and buying new equipment should not exclusively be allocated to St. Jude's valve production, but should be spread over all of CarboMedics' projects in house now or in the reasonable future. CarboMedics contends that the master's findings that it could eventually use its newly-hired personnel and newly-purchased equipment for other customers once it ceases to produce for St. Jude, finding of fact 16 and 15 respectively, are speculative and that the findings of fact which flow from this assumption are also unsupported by evidence (paragraphs 19, 20, and 21). CarboMedics contends that the master's findings in paragraphs 17 and 18 are ambiguous and irrelevant as the issue of computation of costs is unrelated to that of allocation of resources. CarboMedics objects to the proposed price and seeks an interim price of $760 per valve set.

CarboMedics also objects to various provisions of the proposed loan terms. It argues that the source of repayment of the loan should be limited to proceeds it receives from sales to St. Jude with any amounts unpaid because of insufficient profit to be forgiven. It also objects to the terms requiring it to report financial information to St. Jude and requiring Intermedics to guarantee the loan.

### III.

■ After careful consideration of the transcript, exhibits, the master's report, the parties' arguments and objections, and de novo review of the findings and conclusions objected to, the court concludes that the report and recommendation and the master's proposed order should be adopted in their entirety. The master's analysis and method of calculating the interim price is supported by the evidence and it complies with the Eighth Circuit's direction. The record and the language of the Eighth Circuit's December 14 order indicate that the master was justified in rejecting CarboMedics' "actual cost" figures and in taking into account its allocation of its resources. The master's conclusion that the interim price should be the highest price paid by St. Jude under the parties' previously negotiated arms-length supply contracts, adjusted for inflation, is also supported by the evidence. The court concludes that $600 per valve set provides CarboMedics "with a percentage of profit per unit approximately equal to the percentage of profit reasonably anticipated under the 1983 supply agreement."

■ Similarly, the court finds that the master's findings of fact and conclusions of law concerning the loan terms are supported by the evidence and by common sense. The court concludes that the record shows that requiring CarboMedics to report financial information and Intermedics to guarantee the loan is justifiable as both are normal commercial terms. The master correctly rejected CarboMedics' proposal that repayment be limited to proceeds it earns from its sales to St. Jude. Testimony shows that this term is unusual and inappropriate under the circumstances. St. Jude relies on an affidavit of G. Russell Chambers to support its objection to the lack of security, but the record shows that

Intermedics had a net worth in excess of $92,000,000 in 1984. Considering the financial strength of Intermedics, the court concludes that no security is necessary.

## ORDER

Accordingly, based upon this court's independent determination and de novo review of the record, both as to questions of law and questions of fact to which objection has been made, and all the files, records, and proceedings herein, the court hereby adopts the proposed findings of fact and conclusions of law of the Special Master and

IT IS HEREBY ORDERED that

1. St. Jude shall purchase from CarboMedics and CarboMedics shall sell to St. Jude no fewer than 20,000 valve sets. If the court's order to supply ceases before 20,000 valve sets have been supplied to St. Jude, CarboMedics may require St. Jude to purchase up to a total of 20,000 valve sets or may excuse St. Jude from its obligation to do so. CarboMedics may complete all work in progress at the termination of its obligation to sell valves to St. Jude and require St. Jude to purchase any such valve sets;

2. CarboMedics shall sell its carbon components to St. Jude for $600 per valve set until otherwise ordered by the court;

3. St. Jude shall make available to CarboMedics a loan in the sum of $1 million bearing interest from time to time at a rate equal to the average prime index rate publicly announced by First Bank Minneapolis and Norwest Bank Minneapolis. If CarboMedics chooses to borrow from St. Jude in accordance with the terms described below, CarboMedics and Intermedics shall obtain consent for the loan, if necessary, from its bank lenders under Intermedics' Revolving Credit Agreement. The loan's terms shall be as follows:

Availability: Advances will be made in multiples of $10,000 within five days after St. Jude Medical, Inc. receives a written request therefor from CarboMedics, Inc. Amounts repaid may not be reborrowed.

Interest Rate: A fluctuating rate equal to the average from time to time of the prime rate (or corresponding publicly announced rate) of First National Bank of Minneapolis and Norwest Bank Minneapolis, N.A. The interest rate on the loan shall change as said average changes, and shall be computed on the basis of actual days elapsed and a year of 360 days.

Security: Unsecured.

Repayment: The loan shall be a general obligation of CarboMedics, Inc. and shall be unconditionally guaranteed by its parent, Intermedics, Inc. Interest shall be payable monthly in arrears on the first of each month. All principal shall be payable in full upon termination of the litigation now pending between CarboMedics and St. Jude or upon cessation of CarboMedics' obligation to provide valves, whichever event comes first.

Conditions: St. Jude Medical, Inc. shall not make any loans until it has received a promissory note, in form and substance satisfactory to St. Jude Medical, Inc. and duly executed by CarboMedics, Inc., and a guaranty in form and substance satisfactory to St. Jude Medical, Inc. duly executed by Intermedics, Inc. (collectively, the "Loan Documents"); certified copies of the Articles of Incorporation and bylaws of CarboMedics, Inc. and Intermedics, Inc.; certified copies of the resolutions of the Boards of Directors of CarboMedics, Inc. and Intermedics, Inc. authorized to execute and deliver the Loan documents; and opinions from counsel to each of the Intermedics, Inc. and CarboMedics, Inc., in form and substance satisfactory to St. Jude Medical, Inc., to the effect that CarboMedics, Inc. and Intermedics, Inc. are duly organized and validly existing corporations and that the Loan Documents are properly authorized and executed and constitute valid and binding obligations. St. Jude Medical, Inc. shall not make any particular loan re-

quested by CarboMedics, Inc. unless the request is accompanied by a certificate executed by the president or vice president of CarboMedics, Inc. to the effect that each representation and warranty contained in the Loan Agreement is correct on and as of the date CarboMedics, Inc. is requesting the loan and that no default or event of default under the Loan Agreement shall have occurred and be continuing on such date or after giving effect to the loan being requested. Such certificate shall specify the use of the funds requested in sufficient detail to demonstrate that said funds are necessary to produce goods for St. Jude Medical, Inc.

Covenants: CarboMedics, Inc. shall pay, discharge or otherwise satisfy at or before maturity all taxes, indebtedness and other obligations of whatever nature; continue to engage in business of the same general type as now conducted by it, and preserve its corporate existence and all rights and privileges necessary or desirable in the conduct of its business; maintain all property useful and necessary in its business in good working order and condition, insured by reputable insurance companies; keep proper books of record and account in conformity with generally accepted accounting principles.

Prepayment: CarboMedics, Inc. may prepay at any time without penalty. Prepayment shall be applied first to accrued interest and then to principal.

Default: Any of the following shall be events of default: (i) failure to pay principal or interest on the loan when due; (ii) any representation or warranty made or deemed made by CarboMedics, Inc. is incorrect in any material respect on or as of the date made or deemed made, or any covenant or agreement contained in the Loan Agreement is breached, and such breach of incorrect representation or warranty is not cured within 30 days; (iii) CarboMedics, Inc. shall default in payment of any indebtedness to any other lender; (iv) either CarboMedics, Inc. or Intermedics, Inc. shall initiate any case or proceeding relating to bankruptcy, insolvency, reorganization or relief of debtors or seeking appointment of a receiver, trustee, custodian or similar official, or any such case shall be commenced against CarboMedics, Inc. or Intermedics, Inc. and not dismissed for 60 days; (v) a judgment or decree in excess of $100,000 shall be entered against CarboMedics, Inc. and not vacated, discharged or stayed pending appeal within 60 days; (vi) Intermedics, Inc. shall cease to own 100% of the issued and outstanding common stock of CarboMedics, Inc. Upon the occurrence of any event of default, St. Jude Medical, Inc. may declare its commitment to make loans to CarboMedics, Inc. to be terminated forthwith, whereupon that commitment shall immediately terminate; and by notice of default to CarboMedics, Inc. declare all amounts owing to St. Jude Medical, Inc. to be due and payable forthwith, whereupon the same shall immediately become due and payable.

Any event of default described in Clause (iv) above shall automatically terminate the loan commitment and make all amounts outstanding under the Loan Agreement due and payable, without any notice or demand by St. Jude Medical, Inc.

Costs and Expenses: The parties shall pay all of their own costs and expenses relating to the negotiation and preparation of the Loan Agreement. The defaulting party shall pay all costs and expenses of enforcing the terms of the Loan Agreement.